Luis Illanas Blanco, Plaintiff and Appellee, *v.* Cecilio González González, Defendant and Appellant.

No. 7192. Argued June 4, 1937.—Decided June 24, 1937.

*Francisco A. González Suárez* for appellant. *José Veray, Jr.*, for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The essential facts of this case are as follows:

The plaintiff is the owner of a lot measuring 99.2 square meters, with a house thereon numbered 23 on Stahl Street, in the city of Aguadilla. Said lot is bounded on the north by another lot of 99.36 square meters, owned by the defendant, in which there is a concrete house that was originally a one-story house. Defendant's lot was segregated from a

piece of property measuring 4,719.80 square meters, which had been inherited by the plaintiff from Julia Blanco Valentín, and sold by the plaintiff and his wife to Víctor Pérez on July 21, 1931. On the day when Víctor Pérez acquired said lot, it contained a frame house, with a zinc roof, and marked with No. 21 on Stahl Street. Víctor Pérez demolished said house and built a one-story concrete house, which he sold together with the lot, on February 17, 1933, to the defendant. The plaintiff acquired the house situated on his lot of 99.20 square meters, on July 28, 1933, by purchase from Antonio Sosa González and Antonio Sosa Ríos.

The wooden house existing in the plaintiff's lot, which was demolished by Víctor Pérez in order to build a concrete one, had been erected more than twenty years before, and while it existed it had windows on its southern side, adjacent to the northern side of the plaintiff's house. The concrete house built by Víctor Pérez and sold by him to the defendant has on its southern side a concrete wall, without any windows or openings whatsoever overlooking the property of the plaintiff. When he became the owner of the said concrete house, the defendant erected thereon a new story on the southern side of which he opened four windows with direct view over the property of the plaintiff and built a gable fifty-three centimeters wide, projecting twenty-three centimeters over the property of the plaintiff.

In the complaint it was alleged that the acts of the defendant were done without the authorization and against the will of the plaintiff; and prayer was made for a judgment declaring that the property of the plaintiff is not subject to any servitude of light and view nor charged with any servitude of receiving water discharged from roofs in favor of the property of the defendant; that the defendant should close the windows and reduce the width of the gable so that it will not project beyond the limits of his lot and should install rain pipes; that in case the defendant refused to make

such changes the same should be ordered made at his expense; and that the defendant be adjudged to pay costs, disbursements, and attorney's fees.

The defendant denied the essential allegations of the complaint and set up seven special defenses, which may be summarized as follows: That at the beginning of 1931, the plaintiff, owner of the two lots in question, sold to Víctor Pérez the lot which now belongs to the defendant and in which there was a frame house built more than 25 years before; that said house had several windows and doors on the southern side adjacent to the house of the plaintiff, which also has two windows in the side adjacent to the house of the defendant; that when that property was sold, the plaintiff neither prohibited the continuation of the servitude of light and view existing in favor of the house sold nor reserved any right of servitude of light and view in favor of his property, thereby establishing reciprocal servitudes, which have existed for more than twenty years; that no wall, fence, or physical partition was ever constructed between both properties; that the servitudes of light and view and of receiving water discharged from roofs had existed in favor of the property of the defendant for more than 25 years, a fact which gave the defendant the right to continue enjoying the servitudes by prescription; and that the construction of the windows and of the gable was known and witnessed by the plaintiff who made no objection whatever thereto.

The case went to trial and the District Court of Aguadilla rendered judgment ordering the defendant to close the windows and diminish the width of the gable, within thirty days from the date on which the judgment should become final; the plaintiff was authorized to make those changes at the expense of the defendant, should the latter refuse to do it; and the defendant was adjudged to pay the costs, expenses, and attorney's fees. The defendant appealed.

In the first assignment of error it is alleged that the court erred in overruling the demurrer for insufficiency of the complaint. The arguments offered in support of that assignment are entirely frivolous. The complaint contains all the allegations necessary to state a cause of action in favor of the plaintiff. The court acted correctly in overruling the demurrer.

■ The second assignment charges the lower court with error in permitting the plaintiff to testify in regard to the area of the defendant's lot, the best evidence being the title deed in which such area is set forth. We do not think it necessary to discuss this assignment of error. Even if the court erred in admitting the testimony of the plaintiff, the error did not prejudice the rights of the defendant, and furthermore, it was subsequently cured, when the proper documentary evidence was introduced.

■ In the third assignment of error it is claimed that the court erred in refusing to admit in evidence four small photographs offered by the defendant. At the trial, said photographs were shown to the photographer Silva, a witness for the plaintiff, who, after examining them, stated that they were photographs of the two properties involved in this suit. The court refused to admit them, on the ground that according to the adjudicated cases a photograph is not admissible in evidence unless it is identified by the person who took it. We agree with the appellant in that it is not indispensable that the photograph be identified by the person who took it. If it be shown by extrinsic evidence that the photograph in question is a true and faithful representation of the property as it existed at the time of the controversy, it is the duty of the court to admit it in evidence. The photograph may be verified by the photographer who made it or by the testimony of other persons familiar with the premises. See 22 C. J., pp. 913–915, par. 1114–1125; Wigmore on Evidence, paragraph 794; Jones, 3 Commentaries on the Law of Evi-

dence in Civil Cases, 757. The photographs offered in this case were sufficiently verified by photographer Silva, who made the photograph of the premises which was offered by the plaintiff and admitted as exhibit "C" of that party. If the court committed error in refusing to admit it, said error could not possibly prejudice the defendant, since the adjudicated cases hold that when it is possible and practicable to take a view of the premises, the court may exclude photographs because they are secondary evidence. See: *Wyldes* v. *Patterson*, 153 N. W. 630, and *Dobson* v. *Philadelphia*, 7 Pa. Dist. 321. Both the photograph admitted and the one refused were offered to inform the court as to the dimensions and conditions of the gable built by the defendant. The court based its judgment in its own observation during the view taken by it at the request of both parties, without considering the photographs. And using its own senses and a tape it verified the fact that the alley which separated both houses measured only 83½ centimeters, and it concluded that the gable was constructed in such a way that the rain not only fell on plaintiff's land but also on the roof of his house. The error was not prejudicial to the defendant and it must be disregarded.

The charges made by the appellant in his brief that the court acted under the influence of passion, prejudice, and partiality, do not appear justified in any way. There is no conflict in the record in regard to the essential averments of the complaint.

██ Let us see now whether the court erred in applying the law to the facts established by the evidence.

The lower court in its statement of the case and opinion reached the following conclusion:

"From the evidence introduced, as well as from the law and rules applicable to the same, it must be concluded that the defendant was and still is entitled to the servitude of light and view through the windows opened in the one-story frame house which was demolished in order to build a new concrete house; that such windows for light

and view are not removable to be placed in any other story as the defendant attempted to do and actually did when he erected a second story on the original structure, by making there the openings and windows which pertained to the lower story . . .

"There is no doubt that in the course of the various transfers of the lot and of the houses built thereon occurring since the time when the openings and windows overlooking the adjacent estate were maintained for an indefinite period, the servitude of light and view was acquired in favor of that building; but it is no less true that under the theory of inference, those openings or windows can not be made in any other place at the will of the owner of the building in favor of which the servitude of light and view was established, nor can those openings or windows for light and view be transferred to another story."

The two properties involved in this suit belonged to Doña Eustaquia Ríos Hidalgo up to the time of her death, which occurred on April 13, 1928. Although it is an indispensable requisite for the existence of a servitude that the dominant and the servient tenements be owned by different persons, the servitude virtually existed in favor of each one of the lots and against the other, as it is an established fact that the wooden house which stood on the lot now belonging to the defendant had windows overlooking the plaintiff's lot, and similarly as to the other lot. Those windows, apparent signs of a servitude of light and view, had been established and acknowledged by the owner of both estates. While the two lots belonged to a single owner, the servitude existed as a dormant right or encumbrance. And when the ownership of the two estates was divided, the ownership of one passing to the plaintiff and that of the other to the defendant, the servitude was revived for the benefit of each of the estates and against the other, as reciprocal obligations to permit views over and admit light in the buildings existing in either estate. Section 477 of the Civil Code (1930 ed.), which we consider as applicable herein reads thus:

"Section 477.—The existence of any apparent sign of servitude between two tenements established by the owner of both of them, shall be considered, if one of them be alienated, as a title, in order

that the servitudes may continue actively and passively, unless, at the time of the divis'on of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument."

We have examined the deed of partition of the estate of Doña Eustaquia Ríos Hidalgo, whereby the lot and house still owned by the plaintiff and also the lot which now belongs to the defendant were allotted to the former, the two heirs Antonio Sosa González and Antonio Sosa Ríos being awarded, among other properties, the frame house existing in the lot now owned by the defendant; the deed of conveyance whereby the said heirs sold said house to the plaintiff; the deed by which plaintiff Illanas and his wife sold to Víctor Pérez the lot of 99.36 square meters and the house situated thereon, at No. 21 of Stahl Street; and, finally, the deed dated February 17, 1933, whereby the said Víctor Cruz Pérez and his wife sold said house and lot to the defendant herein, Cecilio González. In none of said deeds have we been able to find any clause or stipulation showing the will or the desire of the contracting parties to terminate the servitude of light and view existing in both lots. And as the testimonial evidence shows that at the time of the conveyance of the property which now belongs to the defendant, the plaintiff did nothing to have those apparent signs of servitude removed, we have to agree with the trial court that the defendant, as the successor in title of Víctor Pérez, acquired the right to continue enjoying the servitude already established by the original owner in favor of his lot.

Now we have to decide if that easement of light and view over the estate of the plaintiff may be made extensive to a new story built upon the one already existing in the dominant estate belonging to the defendant.

A servitude is a burden imposed upon real property for the benefit of another estate belonging to a different owner. Real servitudes, also called predial servitudes, are those en-

joyed by the owner of an estate and established on another estate for the benefit of the former. Sections 465 and 467 of the Civil Code (1930 ed.). Real servitudes are inseparable from the estate to which they actively or passively belong. Section 470 of the same code.

Section 518 of the Civil Code provides that "windows with direct views, or balconies or any similar openings projecting over the tenement of a neighbor shall not be made if there is not a distance of two meters between the wall in which they are built and the said property." But it is undisputed that the right to open and keep open that class of windows, when the distance is less than two meters, may be established by the will of the owners. (Sections 472 and 530, Civil Code, 1930 ed.). The evidence in the case at bar undoubtedly shows that the right of the defendant to open windows with direct views over the plaintiff's lot was established by the voluntary act of the latter in selling to Víctor Pérez the lot which now belongs to the defendant and the house that existed thereon, without making any reservation in the deed of conveyance or without ordering the closing of the windows before selling the property, as required by section 477 already cited.

The servitude of light and view is a real right established on an estate, called the servient estate, for the benefit of another called the dominant estate. That right adhered to the dominant estate, was inseparable from it, and was not extinguished by the destruction of the buildings existing on the lot and which were necessary for the use and enjoyment of the servitude. The lower court was also of that opinion, as in no other way could we account for its statement that "the defendant was and still is entitled to the servitude of light and view through the windows built in the lower story of the frame house which was demolished in order to build a new concrete house." If the servitude of light and view were a right appurtenant to the building standing on the lot, that

right would certainly disappear if the building were demolished. And if the same right may be claimed for the benefit of the new building, it is because the servitude has been established for the benefit of the lot or dominant estate, so that any building erected thereon may enjoy the benefit of having light and view over the adjacent lot, even if the wall in which the windows are built is less than two meters from the neighbor's property.

The right of the defendant to the servitude of light and view for the first story of his house having been acknowledged by the lower court and admitted by the plaintiff, it remains for us to decide whether or not the judgment appealed from, in so far as it decrees the closing of the windows opened in the second story of the defendant's house, is contrary to law.

In conveying the ownership of the dominant estate to Víctor Pérez, defendant's predecessor in title, the plaintiff, who kept for himself the adjoining servient estate, said nothing in regard to the nonexistence of a servitude of light and view in favor of the property which he was conveying, did not remove the apparent signs existing over said lot, and did not define or limit in any way the extent of the servitude nor the means available to the new owner of the lot for the use and enjoyment of the right which he acquired by virtue of the provisions of section 477 of the Civil Code, *supra*. Scaevola, in his commentaries regarding section 541, which is the equivalent provision in the Spanish Civil Code, says:

" . . . . The declaration as to the nonexistence of the servitude must be made in the deed of conveyance of either of the estates, as the section provides, that is, be it the one which is to become the dominant or the servient tenement, this being the only sense in which those words may be accepted; provided it is the one first conveyed. From that time on a legal condition is created which must be respected, and it cannot be subsequently altered, except by the will of the interested parties.

"Such declaration must be express; it must leave no doubt regarding the nonexistence of the servitudes. That is, it must be specific, and the general statement that the property is conveyed without encumbrances or servitudes of any kind is insufficient, both because such a statement could be applied to the servitudes that might exist as between the whole of the property, between the legal unity formed by the consolidated ownership, and other properties not included in such ownership, and because said section impliedly requires a specific statement in regard to the existing apparent sign." (*Id.*, vol. 10, p. 286 and 287.)

The purpose of the servitude of light is to receive light and air. The defendant acquired a parcel of land on which there was a house receiving light and air from the adjoining estate, over which it had direct views. Neither in his title nor in the one derived by his predecessor in interest from the plaintiff, owner of the servient, was there imposed any limitation to his right to continue receiving such benefits from the adjacent estate. On the contrary, in the deed of sale from Illanas to Pérez it is stated that the former sells to the latter "the house and lot segregated which are described in the preceding clause, *with all that is inherent or annexed thereto.*"

From Manresa, vol. 4, p. 649, we copy the following:

"Dupret and other authors maintain that one who uses a servitude to the extent of his needs or convenience, retains in its entirety, although he does not do all that he was authorized to do, or although he does it formally in a given place only. Thus, where the passage on foot or in a vehicle is authorized although the easement is availed of only for the passage on foot during twenty years, the right to pass in a vehicle is not lost thereby; where the daily drawing of water is authorized, the fact that water is taken only once, twice, or three times a week does not mean that the right to draw water daily is lost; where the owner of a building is authorized to open in it as many windows as he may wish, the fact that he only opens two or three does not imply after a lapse of twenty years the prohibition to open more windows, etc."

The plaintiff, in conveying the ownership of the dominant estate could have limited the servitude of the first story or

determine the number of windows that the purchaser of the lot might open for the proper enjoyment of his property. However, he failed to do so; and hence he established in favor of the estate conveyed by him an easement of light and views, with all the rights necessary to its enjoyment, in accordance with the provisions of section 478 of the Civil Code (1930 ed.). The defendant is of course bound not to make the servitude more burdensome. The complaint in this case is not based on any claim that the servitude has been made more burdensome to the servient estate, but in an absolute denial of the existence of the servitude. And the evidence, far from showing that the windows on the second story are more burdensome to the estate of the plaintiff than if they had been built in the first story, shows exactly the opposite, since, the house of the plaintiff being a single-story building, only the roof of the adjacent house may be seen through the second-story windows, whereas the windows opened in the first story would have a direct view over the interior of plaintiff's house, which would be more burdensome to the latter.

The defendant, as owner of the lot, has a right to build on it from the ground up to any height and to provide any buildings thereon with such windows as are reasonably necessary for the use and enjoyment of the estate. Due to the special circumstances of this case, we must also hold—in order to settle, once and for all, the rights of the plaintiff—that he, as owner of the other lot, has the same rights as the defendant, since the latter, in accepting the conveyance in his favor with the knowledge that in the wall of the adjacent house there existed windows with direct views over his lot, and without objecting to or limiting in any way the right of his neighbor, acquiesced in, and consented to, his neighbor's enjoyment of his property with the same rights that the defendant acquired for the enjoyment of his own property. We are of the opinion that conformable to equity, this is the best and more just solution which can be given to this situation created by the voluntary acts of the litigants.

For the reasons stated the judgment appealed from must be modified by reversing it in so far as it orders the defendant to close the four windows built in the second story of his house; in so far as it adjudges the defendant to pay costs, disbursements and attorney's fees; and in so far as it authorizes the plaintiff to do, upon defendant's default, the necessary work to reduce the width of the gable built by the defendant. And as thus modified, the judgment entered by the District Court of Aguadilla on March 16, 1935, is affirmed, and the defendant is ordered, under penalty of contempt of court in case of default, to do the necessary work to diminish the width of the gable and to reform it in accordance with the orders of the court, all without special imposition of costs.

Mr. Justice Córdova Dávila took no part in the decision of this case.